RuppiN, Judge.
 

 There'cannot he a difference of opinion upon some of thé general' principles involved in this case. Such as these : that the law of the country where the contract is made is the rule by which the validity of it, its exposition and consequences aré to bo determined : and that where property in a particular country becomes, by the law of that country, rightfully vested absolutely in the possessor, as against another also in that country, his' right is recognized, for his own benefit and that of his assignees, all over the world. The difficulty here is, to determine whether the right of property was determi-mined in Virginia by the law of that
 
 state;
 
 and whether if it were not, the'law can follow the thing here for any purposes. In the Superior Court it was admitted, that a purchaser
 
 pen dente- lite
 
 in Virginia would not have a good title ; but it was supposed, that a purchaser here was not affected by that suit, because it was in another state, and he was not bound to take notice of it. And ¡therefore it was held, that the statute of 1785 gave a; good title to the defendant, as a purchaser here from the bail-ee, who, as to the defendant, continued to be a bailee, not-Withstanding the action against him.
 

 I cannot agree in this reasoning, because it is a contradiction in terms to say, that a purchase out of Virgin-
 
 *164
 
 ja gives, by force of tlie-law of Virginia, a good title,.. when by the- same law, a.purchase in that state would confer no property.
 

 in construing' trie law or another state, the state ^ifknown* we to be followed"
 

 It might well be doubted, whether the statute of our sister state follows the chattel here at all; unless the whole title be consummated according to-it in that state. In other words, whether a purchaser, to be within the act, must not be a purchaser in that state... His title is then consummated under the law, where that law operates, and is therefore sustained, wherever that title is discussed., But it is not so easy to see, how one can-by virtue of a law of a particular place,
 
 acquire
 
 a
 
 title
 
 at another place, where that law has no obligation, as to the requisites and effects of a contract made at this latter place. If in this case therefore, I understood the statute of Virginia in the way it is put in one part of the argument for the defendant, as not conferring on him the title, but only the power of conveying a, good title to another, I should not hesitate to. say that everything must be transacted there, so as to complete the title in that state : for we can only take notice of laws conferring-rights there; and not those giving a power there, tobe exercised elsewhere. The law of the place whore the power is exercised, determines the extent and the validity of the title obtained under it. But I do not-think
 
 that
 
 the fair meaning of this statute. In putting a construc-^on Uj)0n the statute of a sister state, this court would 1 • certainly adopt that of her own tribunals,
 
 if.known
 
 to lls‘ nQne suc^ ^iavc been furnished to us, and we are therefore obliged to understand the statute in the sense which its words convey to us. It is in this, part of it a remedial statute against fraudulent
 
 conveyances;
 
 and as against creditors and purchasers from the possessor of a chattel for five years, a loan of such chattel, or reservation of a use therein shall be taken and deemed to be pretended and fraudulent, and the absolute property to be with such possessor, unless such loan or reservation of use be declared by will, or by deed proved and l’ecorded. But the clause has this farther and important provision in it: that such possession for five years shall be with
 
 *165
 
 out demand made and pursued by due process of law on the part of the lender. The enquiry is, what title the bailee gets by this law ? It was obviously made for the protection of creditors and purchasers from the holder only, and it is to be taken, fair ones. It is observable and singular, that thesame policy should in the two states have produced a legislation diametrically opposite. The policy is to suppress fraud. To effect it, our system as contained in the acts of 1784, t'806, and the proviso, in 1820, is to avoid the gift to, and title of the bailee, in protection of the first donor or bailor, and
 
 his
 
 creditors and purchasers. Virginia avoids the rights ofthe donor and his creditors, in aid of the creditors and purchasers from the bailee; and'for them turns an express loan into a valid gift. But ’the statute does not profess to interpose between the lender and borrower themselves. Possibly and probably such a possession may endue the latter with a
 
 prima'fade
 
 right, and enable him to maintain
 
 trover
 
 or even
 
 detinue
 
 against a stranger. B at as between the parties it remains a loan; and the law gives no rights to the borrower for his own benefit, bnt only for the benefit of his creditors, or purchasers from him. The bai-lor may at any time then, after the lapse of the five years, maintain his action against the bailee.' For, the possession is not to be deemed adverse, until there is arefusal by the bailee to redeliver, or until it be set' up by a creditor or purchaser, as to whom the bailee is to be taken as having the absolute property, The'n what creditor or purchaser is meant ? Certainly' not one within the five years, unless the two possessions united make that, period. And as certainly, I think, not a purchaser, (however it may be as to a creditor,) who becomes so after the possessor ceases to be a bailee, and has become a trespasser within the act. It cannot be argued, that if the bailee at the distance of ten years return the chattel, he can afterwards sell it. Why ? He ceases to .be the-possessor under the loan, and. the purchaser cannot be imposed on. So if he- be made a trespasser by a demand of the lender, followed up. by a suit successfully prosecuted, he cannot after judgment make á gpod title.
 
 *166
 
 "Why ? For tlie same reason — because lie does not rightfully hold under that loan, which is declared in the act to be fraudulent. Can ho sell pending such a suit ? St would seem strange if he could — for the demand and consequent action have precisely the same effect upon.the the character of the possession, as the judgment therein rendered has. And there is this absurd consequence, to which such a position leads : the law allows the action to the lender against the borrower ; hut enables the latter to defeat it, by a sale posterior to the bringing of the suit. What is the value of such a right of action ? There is no middle ground. Either the bailee has, by the live years possession without suit, an absolute title against the • bailor, as well as the rest of the world j or he cannot,. if I may use the expression, discontinue by alienation. And the former is not even contended ; and from the result of the suit in Virginia, I presume cannot he. It is true, the common doctrine of
 
 Us pendens
 
 does not extend beyond .the jurisdiction of the/orwm, and as such, does not affect this defendant, unless by force of the constitution of the United States, and act of Congress, giving to the judicial proceedings of one state full faith and credit in the others. I do not stop to investigate the operation of that principle, because I conceive the ■ case does not depend on it. For the cause turns upon the enquiry, what purchaser is meant by him,
 
 for whom
 
 the possessor shall be said
 
 to have the title?
 
 Is he within the act, who becomes so after the borrower has ceased
 
 to
 
 have the possession, or has ceased to have the forbidden fiduciary possession ? If he be, then neither a
 
 lis pendens
 
 nor a-final judgment can annul the title acquired by him; because he holds above the plaintiff whose title is declared fraudulent and void, as to the purchaser protected by that act. But it has been shown, I think, that such a purchaser is not within the statute. This then is not upon the ground of a
 
 Us pendens,
 
 but upon the higher and more general one, extending to persons out of Virginia, as well as those in
 
 it;
 
 namely, that the nature of the possession is changed, and from a rightful one, has become wrongful towards the
 
 bailor;
 
 and therefore that the pos-
 
 *167
 
 scssor is not such a possessor in whom the title shall be adjudged, for the benefit of one claiming by purchase from him. The defect of the defendant’s title then does not consist in his having notice that his vendor was a trespasser, but in the fact that he was. He could convey no title here nor there, because in the state of facts existing, lie had, by the law of Virginia,
 
 no title
 
 in that state. Upon a question of legal title, notice has no influence. The want of it cannot -constitute that a right, which is not a right; nor can notice of a defective title in another make that better. Legal claims depend upon their intrinsic strength. .And the rule is,
 
 caveat emp tor:
 
 see that your vendor has good
 
 right;
 
 or in case he has not, secure yourself by covenants.
 

 upon questions of legal title notice has no influence ; it does not affect a valid one, nor is a defective one aided by want of it.
 

 I conclude therefore, that Greers, under the law of Virginia, had, at the time of the sale to the defendant, no title in himself for any purposes ; and therefore, that the sale set up here passed none. Consequently there must bo a new trial.
 

 It will be seen, that the opinion of the court turns entirely upon the construction of the statute of Virginia, which wo have reluctantly been compelled unaided to make. Á second tidal will enable
 
 the
 
 parties to correct a misconstruction by evidence, or cases showing the construction made in that state ; which the court would feci every inclination, & acknowledge the obligation to follow. I entertain much diffidence in saying what is the meaning of that statute. But I cannot but have confidence in the opinion, that if the title of a purchaser in Virginia is bad, that of one hero is not good.
 

 Pjsu Curiam. — Judgment reversed.